**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| H. THAYNE DAVIS, | : | |
| Plaintiff, | : | Case No. 3:04CV0059 |
| vs. | : | Magistrate Judge Sharon L. Ovington (By Consent of the Parties) |
| LIFETIME CAPITAL, INC., *et al.*, | : | |
| Defendants. | : | |

**DECISION AND ORDER**

**I.     BACKGROUND**

On March 10, 2006, the Court granted the Receiver's Motion to Approve Bidding and Portfolio Sale Procedures (Doc. #397; *see* Doc. #393, Exhibit A), and implemented various bidding procedures and requirements. The Order further required the Receiver, his counsel, and the Court-appointed Examiner to review all bids compliant with the bidding requirements and submit the bids to the Court along with recommendations regarding the highest and best bid. (Doc. #397; *see* Doc. #393, Exhibit A). The Court scheduled a hearing on March 29, 2006 to evaluate the bids and directed the Receiver to notify LifeTime investors about the date and time of the hearing. (Doc. #397). The Court further ordered, "all interested parties shall have an opportunity to be heard regarding the proposed sale of the LifeTime Portfolio during the March 29, 2006 hearing." (Doc. #397 at 3).

During the hearing, the evidence surprisingly established that the Receiver had communicated with one bidder – Lorenzo Tonti Fund, Ltd. ("Tonti") – after the close of the bidding

process.  The Receiver allowed Tonti to submit an enhanced bid after the deadline set forth in the bidding procedures.  The Receiver failed to accord any other bidder with the same opportunity. Consequently, the other bidders objected asserting that Tonti had impermissible contact with the Receiver to the detriment of the other bidders, and that Tonti had access to the Receiver and to information that was not accorded to the other bidders.

On March 30, 2006, the Court held a hearing concerning whether to reopen the bidding on the LifeTime Portfolio.  On the day of the hearing Tonti filed a Motion to Intervene.  (Doc. #408). During the hearing, the Court permitted Tonti to appear through counsel for the purposes of the hearing.  Tonti's counsel argued that its bid must be accepted as the highest and best bid.

The Court concluded that there were irregularities in the bidding process due to actions by the Receiver and refused to accept any bids presented.  Instead, the Court issued an Order and Supplemental Order reopening the bidding process and setting forth the procedures to be followed.

Tonti objected to the Court's Orders as it perceived itself to have the highest and best bid. Tonti then participated in the further bidding process under protest.  Through counsel, Tonti sent a letter to the Court (Doc. #424, Exhibit 11), asking the Court to suspend the bidding and to accept its enhanced bid.  Tonti stated that it intended not only to seek injunctive relief but also to notify the issuing life insurance companies that there is a cloud on the title to the policies in the LifeTime Portfolio and that the policies should not be transferred or paid upon maturity pending outcome of the litigation.  (Doc. #424, Exhibit 12).

After the renewed bidding closed, the Court held a hearing to consider the highest and best bid for the sale of the LifeTime Portfolio.  During the hearing, the Receiver testified and an actuarial accountant testified in support of Tonti's bid.  Two bidders – SPCP Group, LLC ("SilverPoint") and

Tonti – each argued that it had the highest and best bid.

On April 21, 2006, the Court held, for various reasons, that SilverPoint, not Tonti, presented the highest and best bid, and consequently accepted the SilverPoint Bid and rejected the Tonti Bid. Thereafter, the Court set a final hearing on May 9, 2006 to conclude the sale of the LifeTime Portfolio. (Doc. #436).

This case is presently before the Court upon Tonti's Motion To Intervene (Doc. #408), Tonti's Motion to Submit a Restructured Bid (Doc. # 444), and Tonti's Motion to Submit a New Bid in the amount of $20,000,000. (Doc. # 450).

**II.    ANALYSIS**

    **A.    Tonti's Motions to Submit a Restructured Bid and Submit a New Bid are Denied**

On May 1, 2006, Tonti filed a Motion to Submit a Restructured Bid. (Doc. # 444). On May 11, 2006, Tonti filed a Motion to Submit a New Bid in the amount of $20,000,000. (Doc. # 450). ( "The Bid Motions"). SilverPoint argues that Tonti's motions should be denied. (Doc. # 451)

Tonti has presented no evidence and has made no compelling argument as to why this Court should consider the Bid Motions and defeat the real expectation of finality resulting from the Court's order accepting SilverPoint's bid as the highest and best. SilverPoint cogently argues that the Bid Motions are nothing more than a collateral attack on this Court's previous order finding SilverPoint's bid to be the highest and best. (Doc. # 451 at 2). This Court agrees and rejects Tonti's attempts to continue and/or reopen the bidding process by submitting additional bids which are subject to a reservation of rights and offer no real additional value to the investors.

In reviewing the Bid Motions this Court must balance the interests of the finality of the sale

process versus the maximization of the sale price. As noted in *Corporate Assets, Inc., v. Paloian*, 368 F. 3d 761 (7th Cir. 2004):

> [o]nce a court has confirmed the sale of the debtor's assets to the auction's victor, for example, the public interest in finality is high and the parties reasonably expect that the bidding is over. At that juncture, only a narrow range of circumstances will support a court's decision to vacate the sale order and reopen the bidding. The simple fact that a late bid offers the estate more money than the bid previously approved by the court will not suffice; only if the belated bid reveals the initial sale price to be 'so grossly inadequate as to shock the conscience of the court' ... or if the original auction was tainted by fraud, mistake, or some comparable defect ... will a court be justified in setting aside a confirmed sale.

*Id.* at 768.

The SilverPoint bid previously accepted by this Court is not "so grossly inadequate as to shock the conscience of the court." In fact, given the risks associated with and the infirmities in the bids offered in Tonti's Bid Motions, they provide no additional value to the investors on a risk adjusted basis. Tonti's argument that SilverPoint had an opportunity to impermissibly increase its bid after this Court accepted it by virtue of the Receiver's testimony that an additional amount of $300,000.00 was realized by virtue of the purchase agreement negotiations is flatly rejected. Silver Point explains that it was not increasing its bid, it was forced by the Receiver to capitulate in order to proceed with the sale. (Doc. # 451 at 8). Had Silver Point refused to accede to the Receiver's demands, both Tonti and the Receiver would have been able to argue that Tonti's bid should be accepted, just as they both have argued since the original presentation of the bids. Silver Point has entered into this process in good faith and with clean hands. It should not be punished for the actions of Tonti and/or the Receiver. Accordingly, Tonti's Motions to Submit a Restructured Bid (Doc. # 444 ) and Submit a New Bid (Doc. # 450) are DENIED.

### B.    Tonti's Motion To Intervene (Doc. #408)

### 1.    Intervention as a Matter of Right

Tonti argues that once the original bidding process ended with Tonti as the high bidder, Tonti held an interest in the LifeTime assets such that disposition of these assets in any manner inconsistent with the initial bidding procedure would impair or impede Tonti's ability to protect its interest. The facts clearly indicate however that Tonti was not deemed by this Court to be the highest and best bidder.

A non-party to a case may intervene as a matter of right in the following circumstances:

> Upon timely application anyone shall be permitted to intervene in an action: (1) ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately protected by existing parties.

Fed. R. Civ. P. 24(a).  To bring itself within the ambit of Rule 24(a), Tonti must establish four elements: (1) timeliness of its application to intervene, (2) its substantial legal interest in the case, (3) impairment to its ability to protect that interest absent intervention, and (4) inadequate representation by the existing parties.  *Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005)(quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)) (other citation omitted).  Tonti "must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied."  *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

Tonti's effort to intervene as a matter of right fails because Tonti cannot demonstrate that it holds a legal interest in the LifeTime Portfolio or any LifeTime assets.

> There is no clear definition of what constitutes a litigable 'interest' for

> purposes of intervention under Fed. R. Civ. P. 24(a)(2).... The Supreme Court has noted that 'what is obviously meant [by Fed. R. Civ. P. 24(a)(2)] is a significantly protectable interest.' *Donaldson v. United States*, 400 U.S. 517, 532 ... (1971). Similarly, the Sixth Circuit has required a 'direct, substantial interest' in the litigation which must be 'significantly protectable.' *Jansen v. City of Cincinnati*, 904 F.2d 336, 341; *Grubbs*, 870 F.2d at 346. The Sixth Circuit has opted for a rather expansive notion of the interest sufficient to invoke intervention of right. *Michigan State AFL-CIO v. Miller*, 103 F.3d at 1245."

*Redland Insurance Co. v. Chillingworth Venture, Ltd.*, 171 F.R.D. 206, 207 (N.D. Ohio 1997). Because of this expanded notion of the type of legal interest needed for intervention as a matter of right, "'an intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing.'" *Providence Baptist Church*, 425 F.3d at 315 (quoting *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994)). The Sixth Circuit has also "cited with approval decisions of other courts 'reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'... 'The inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (quoting in part *Miller*, 103 F.3d at 1245) (other citations omitted).

From the outset, the present case has been about the harm caused to individuals who invested in or purchased LifeTime viatical insurance contracts. There is no factual allegation or legal claim in the Complaint and no defense raised in the Answer relating in any way to Tonti. As the case progressed with the need for the Receivership, the case has evolved mainly into a concern over the financial health of the Receivership with the ultimate goal of protecting and managing the remaining LifeTime assets for the benefit of the investors. Tonti played no role in these activities and held no interest – not even speculative one – in the Receivership or LifeTime's assets. *Cf. Liberte Capital Group, LLC v. Capwill*, 421 F.3d 377, 383 (6th Cir. 2005)(investor holds property interest in the viatical insurance contracts in which he invested).

6

Tonti's purportedly substantial interest first arose – from Tonti's perspective – only at the close of the original bidding when, according to Tonti, it was the high bidder. *See* Doc. # 408 at 3. The Court, however, did not accept any bid at the close of the original bidding due to irregularities caused by the Receiver's acts of contacting Tonti after the close of bidding and the Receiver's decision to permit Tonti to submit an enhanced bid after the deadline set forth in the bidding procedures. Because the Court never accepted either Tonti's original bid or the bid Tonti submitted after the second round of bidding, Tonti never gained an ownership or any other interest in the LifeTime Portfolio. At most, Tonti holds an unrealized desire to purchase the LifeTime Portfolio without any interest of any kind in the viatical insurance policies it contains. At one time, Tonti was a potential buyer of a product – the LifeTime Portfolio – sold to another entity. This product is no longer for sale. As such, Tonti lacks any interest, substantial or otherwise, in the LifeTime Portfolio.

Although intervention as a matter of right is controlled by a rather expanded notion of what constitutes a legally protectable interest, *see Providence Baptist Church*, 425 F.3d at 315, this interest is not without limits and is not satisfied by Tonti's mere unrealized desire to purchase the LifeTime Portfolio. This is seen particularly in what will occur if the case proceeds without Tonti. As time goes by, the Receivership will continue to be managed by the Receiver with Court monitoring. The Receivership will be funded in large part by the all-cash sale to SilverPoint of the LifeTime Portfolio. From the Receivership funds, the Receiver will pay investors. The Receivership will no longer be responsible for paying the premiums on the viatical life insurance contracts. Silverpoint will pay these premiums or the policies they own will lapse to SilverPoint's own detriment, not causing any harm to the investors or the Receivership. These events in no way involve or impact Tonti. Nothing can possibly occur during the ongoing proceeding of this case and

the Receivership that effects an interest, substantial or otherwise, held by Tonti. When the Receivership and this case eventually ends, Tonti will remain unaffected regardless of the outcome. Consequently, Tonti lacks any interest in this case.

Tonti seems to acknowledge the above through its willingness – during the original bidding on the LifeTime Portfolio – to waive any appeal right. Specifically, the Bid Cover Sheet to Purchase Agreement LifeTime Capital submitted by Tonti on March 24, 2006, during the original bidding, stated, "that as an express condition of this bid, Bidder [Tonti] waive any right to directly or indirectly appeal or seek a stay or injunction against the effectiveness of the Sale Order to be approved by the Court in the Receivership Proceeding...." (March 29, 2006 Hearing, Receiver's Exhibit #11 at 14).

Tonti has also mistaken its status at the close of the original bidding. Tonti asserts that it presented the winning original bid. This is incorrect because the Court did not so hold at the conclusion of the original bidding due to irregularities in the bidding procedures. Tonti, moreover, presented a structured bid, rather than an all-cash bid like the other bidders. In this situation, the determination of which bid was the highest and best was not the simple matter of accepting the highest all-cash bid. It instead would have been the more complex comparison of the highest all-cash bid with Tonti's structured bid, a comparison the Court did not make at the conclusion of the original bidding due to the irregularities in the bidding procedures. For these reasons, the interest Tonti asserts is based on Tonti's incorrect characterization of its status as the winning bidder at the close of the original bidding. No entity won the original bidding due to irregularities in the bidding process caused by the Receiver.

Because Tonti lacks any interest, substantial or otherwise, in this case, its attempt to

intervene also fails the third element, which requires the existence of an interest held by Tonti that will not be protected absent intervention. No such interest exists, and consequently, no failure to protect Tonti's interests will occur absent intervention.

Accordingly, Tonti's Motion to Intervene as a matter of right under Fed. R. Civ. P. 24(a) lacks merit.

### 2. **Permissive Intervention**

Assuming in Tonti's favor that its Motion for permissive intervention is timely and that it involves a common question of law or fact, *see Miller,* 103 F.3d at 1248, this Court must balance any undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the Court's discretion, intervention should be allowed. *United States v. Michigan*, 424 F.3d at 445.

Other relevant factors in this case relate to the uncertain nature of the structured bid presented by Tonti. When accepting SilverPoint's bid, the Court determined in part, "the present and certain gain to the many elderly LifeTime Investors definitively created by acceptance of SilverPoint's final bid overwhelms the unreliability of Tonti's final bid." (Doc. #436 at 6). Permitting Tonti to intervene in this case for the purpose of purchasing the LifeTime Portfolio, or litigating whether any of its bids must be accepted, would introduce uncertainty and unreliability where none presently exists in light of the Court's decision to accept SilverPoint's all cash bid. Tonti's intent, moreover, is not to promote the interests of the Receivership or the investors but is instead to promote its own profits. From a business standpoint, this motive is both reasonable and understandable. Yet, from the investors' or the Receivership's standpoint, their interests in obtaining the most benefit from the sale of the LifeTime Portfolio is subordinated to any rights Tonti

gains through its purchase of the LifeTime Portfolio.  As the Court noted when accepting SilverPoint's all-cash bid, under Tonti's proposed seven-year period that the maturities would have to reach big numbers before the investors would be able to participate or share in proceeds from the matured insurance policies.  Tonti's prediction that these big numbers would likely be reached during the seven-year period is highly speculative.  Allowing Tonti to intervene for the purpose of accepting its structured bid or litigating whether its structured bid must be accepted would introduce uncertainty and unreliability removed by the Court's earlier acceptance of SilverPoint's all-cash bid.  While SilverPoint also holds a profit motive, SilverPoint's profit motive will have no impact on the investors or the Receivership once the sale of the LifeTime Portfolio occurs.  Under SilverPoint's all-cash bid, the investors will receive a definite return regardless of when or how many viatical life insurance contracts mature.

In addition, Tonti intends to appeal the Court's decision to reject Tonti's original bid and permit a second round of bidding.  Tonti's counsel, through a facsimile transmission has asked the Court to incorporate the "no just reason for delay" language of Fed. R. Civ. P. 54(b) into its Decision prior to the fairness hearing .  Such an appeal would introduce further delay and uncertainty to a case that demands the opposite for the benefit of the investors and the Receivership.  It was for this reason that the Court required any bidders to waive any right to directly or indirectly appeal or seek a stay order or injunction against the effectiveness of the Sale Order to be approved by the Court in the Receivership Proceeding as a condition to participate in the bidding process. Tonti expressly agreed to this provision. (*See:* Exhibit 11, admitted at the March 29, 2006 hearing). Despite this contractual agreement, Tonti, apparently intends to appeal and to suggest to the insurance companies that issued the polices in the LifeTime Portfolio that a cloud exists over ownership of the policies.

10

No such cloud presently exists and no such cloud will form upon final approval of SilverPoint's all-cash bid. Even if Tonti responds to the final sale to SilverPoint by suggesting to the life insurance companies that a cloud over the ownership of the policies exists, such a cloud will have no impact on the Receivership, which at that point will hold no right or ownership interest in the life insurance policies. Although Tonti also intends to seek a stay of the transfer of the life insurance policies to SilverPoint, if the stay is denied, the transfer will occur and any ensuing act by Tonti will have no impact on the investors or the Receivership.

Accordingly, Tonti's Motion for permissive intervention under Fed. R. Civ. P. 24(b) lacks merit.

### C. Tonti's Remaining Argument

Tonti also seeks an Order permitting it to file its Motion to Intervene as a Memorandum in Opposition to certain bidders' requests that a new round of bidding be opened for the sale of the LifeTime Portfolio. (Doc. #408 at 1). Prior to accepting SilverPoint's bid, the Court fully considered Tonti's Motion to Intervene as a Memorandum in Opposition to certain bidders' requests for a new round of bidding. This, however, did not alter the conclusion that irregularities occurred during the original bidding process, necessitating a new round of bidding. Tonti, moreover, has often apprised the Court of its objections to the second round of bidding and has repeatedly asked the Court to accept its original bid as the highest bid. Indeed, all of its subsequent bids have contained a reservation of rights, presumably to allow it to argue that it's original bid should be accepted.

Although the Court has fully considered Tonti's arguments regarding these issues, Tonti has simply not presented any fact or circumstance sufficient to convince the Court that irregularities did

11

not occur during the original bidding or that its original bid must be accepted as the highest and best bid.

Yet, to clarify the record, the Court will grant Tonti's request for consideration of its Motion to Intervene as a Memorandum in Opposition to certain bidders' requests for a new round of bidding. After further consideration of Tonti's opposition to the second round of bidding, it again appears that Tonti presents no fact or reason in conflict with the Court's conclusion that irregularities occurred during the original bidding, and that as a result, the second round of bidding must be undertaken. A second round of bidding was required to negate the irregularities caused by the Receiver during the original bidding, and to provide all bidders with a fair procedure for submitting their bids.

**IT IS THEREFORE ORDERED THAT:**

1. Tonti's Motion to Submit a Restructured Bid (Doc. # 444) is DENIED;

2. Tonti's Motion to Submit a New Bid (Doc. # 450) is DENIED;

3. Tonti's Motion to Intervene (Doc. #408) is DENIED; and

4. Tonti's request for a Rule 54(b) certification is DENIED.

June 2, 2006

                                                s/ Sharon L. Ovington
                                                    Sharon L. Ovington
                                             United States Magistrate Judge